UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIDNEY RABINOWITZ, M.D.<br><br>　　　　　　　　　Plaintiff,<br><br>-against-<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>　　　　　　　　　Defendant. | Index No.:<br><br>**COMPLAINT** |

Plaintiff, Sidney Rabinowitz, M.D. ("Plaintiff"), on assignment of Anne L., by and through his attorneys, Schwartz Sladkus Reich Greenberg Atlas LLP, by way of Complaint against Cigna Health and Life Insurance Company ("Defendant"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a medical practitioner with a principal place of business at 305 Route 17 South, Paramus, New Jersey 07652.

2. Upon information and belief, Defendant is engaged in administering health care plans or policies in the state of New Jersey.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The insurance policy at issue is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The administrative remedies have been exhausted.

4. Venue is proper in the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this action occurred with the District.

## FACTUAL BACKGROUND

5. Plaintiff is a medical provider who specializes in plastic surgery and at times performs breast reconstruction surgery.

6. On May 11, 2017, Plaintiff performed breast reduction surgery on Anne L. ("Patient") in Valley Hospital to treat Patient's bilateral breast gigantomastia. (*See*, **Exhibit A**, attached hereto.)

7. At the time of Plaintiff's treatment of Patient, Patient was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

8. Patient assigned her applicable health insurance rights and benefits to Plaintiff. (*See*, **Exhibit B**, attached hereto.)

9. Plaintiff does not have a network contract with Defendant that would determine or limit Plaintiff's reimbursement for his treatment of Defendant's members.

10. Following Plaintiff's treatment of Patient, Plaintiff submitted a Health Care Financing Administration ("HCFA") medical bill to Defendant demanding payment for the performed treatment in the total amount of $39,500.00. (*See*, **Exhibit C**, attached hereto.)

11. The Current Procedural Terminology ("CPT") Code billed for Plaintiff's treatment was 19318. In addition, modifier 50 was appended representing that the treatment was performed bilaterally, and modifier 62 was appended representing that Plaintiff served as co-surgeon.

12. In response to Plaintiff's HCFA, Defendant issued an explanation of benefits indicating that Plaintiff's claim was denied because Plaintiff's treatment was not medically necessary. (*See*, **Exhibit D**, attached hereto.)

13. Plaintiff subsequently submitted an internal appeal challenging Defendant's medical necessity denial as improper.

14. In response to Plaintiff's appeal, Defendant issued an appeal response upholding its denial of Plaintiff's claim. The appeal response explained that the reason Plaintiff's treatment was deemed medically unnecessary was because "a co-surgeon is typically not required for this procedure." (*See*, **Exhibit E**, attached hereto.)

15. The appeal response further represented that no additional internal appeals were available to Plaintiff or Patient. *Id*.

16. The operative report for Plaintiff's treatment expressly states,

> "Of note, this surgery required 2 surgeons because of the unusually large size of the breast reduction, each breast being between 2500 gm and 3000 gms of anticipated resection. This required the expertise of 2 Plastic surgeons operating simultaneously, both together and independently. Two surgeons were needed to minimize operative time, increase efficiency, and assure safety of the patient, through limiting anesthesia time and limiting blood loss during the procedure."

(See, Exhibit A.)

17. The additional co-surgeon who treated Patient alongside Plaintiff was Hakan Usal, MD. *Id*.

18. Like Plaintiff, Dr. Usal submitted a claim for reimbursement to Defendant for his treatment of Patient in the amount of $39,500.00, utilizing CPT Code 19318, and appending modifier 62 to represent that he served as co-surgeon.

19. Defendant referred Dr. Usal's claim to a third-party vendor known as Zelis to negotiate payment for Dr. Usal's claim.

20. Zelis, on behalf of Defendant, proposed payment to Dr. Usal in the amount of $24,490.00, exactly 62% of Dr. Usal's claim. (*See*, **Exhibit F**, attached hereto.)

21. Pursuant to medical coding guidelines, co-surgeon claims, as identified by use of the 62 modifier, are reimbursed at 62.5% of the reimbursable amount for the subject procedure. That is, the co-surgeon receives 62.5% of what he or she would receive if the treatment was performed by one surgeon. (*See*, for *e.g.*, **Exhibit G**, attached hereto.)

22. While Zelis's offer of reimbursement was 62% of Dr. Usal's claim amount, and not 62.5%, it appeared to Dr. Usal that the 62% calculation was based on his role as co-surgeon.

23. Indeed, on October 18, 2018, a representative of Zelis confirmed via email to a representative of Dr. Usal that the calculation of reimbursement for Dr. Usal's claim accounted for the appendage of the 62 modifier.

24. Dr. Usal accepted Zelis's payment proposal and Defendant issued payment to Dr. Usal in the amount of $24,490.00.

25. Defendant's denial of Plaintiff's claim was improper, under the terms of Patient's insurance plan, because Patient's treatment required co-surgeons.

26. Defendant's processing of Dr. Usal's claim at a co-surgeon reimbursement rate is in direct contradiction with Defendant's determination that Plaintiff's co-surgeon services were not medically necessary.

27. As demonstrated via Defendant's processing of Dr. Usal's claim, the appropriate reimbursement for Plaintiff's treatment is $24,490.00.

28. Plaintiff has thus been damaged in the amount of $24,490.00.

29. Accordingly, Plaintiff brings this action for recovery of the outstanding balance, and Defendant's breach of fiduciary duty.

## COUNT ONE

### FAILURE TO MAKE PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B)

30. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 29 of the Complaint as though fully set forth herein.

31. Plaintiff avers this Count to the extent ERISA governs this dispute.

32. Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a benefits plan.

33. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient.

34. Upon information and belief, Defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

35. Plaintiff is entitled to recover benefits due to Patient under any applicable ERISA plan or policy.

36. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

## COUNT TWO

### BREACH OF FIDUCIARY DUTY AND CO-FIDUCIARY DUTY UNDER 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a)

37. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 36 of the Complaint as though fully set forth herein.

38. 29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

39. Plaintiff seeks redress for Defendant's breach of fiduciary duty and/or Defendant's breach of co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a).

40. 29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

41. Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 29 U.S.C. § 1104(a)(1).

42. 29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

43. Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care] of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such

other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

44. Here, when Defendant acted to partially deny payment for the medical bill at issue, and when they responded to the administrative appeals initiated by Plaintiff, they were clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

45. Here, Defendant breached its fiduciary duties by: (1) failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations; (2) participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (3) failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and (4) wrongfully withholding money belonging to Plaintiff.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A.     For an Order directing Defendant to pay Plaintiff $24,490.00;
B.     For an Order directing Defendant to pay Plaintiff all benefits Patient would be entitled to under the insurance plan or policy administered by Defendant;
C.     For compensatory damages and interest;
D.     For attorney's fees and costs of suit; and
E.     For such other and further relief as the Court may deem just and equitable.

Dated: New York, NY
March 13, 2020

                                  SCHWARTZ SLADKUS
                                  REICH GREENBERG ATLAS LLP
                                  *Attorneys for Plaintiff*

                        By:    /s/ Michael Gottlieb
                                  Michael Gottlieb
                                  444 Madison Avenue
                                  New York, NY 10022
                                  (212) 743-7054